IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 23-34586 |
| | § | |
| LBU FRANCHISES CORPORATION, | § | Chapter 11 |
| | § | |
| DEBTOR. | § | Subchapter V |
| | § | |

**DEBTOR'S PLAN OF REORGANIZATION DATED MAY 10, 2024**

LBU Franchises Corporation, the debtor-in-possession in the above-captioned bankruptcy case, proposes this Plan of Reorganization.

TABLE OF CONTENTS

| | | |
|---|---|---|
| <u>I.</u> | Definitions | 1 |
| <u>II.</u> | Debtor's History | 3 |
| <u>III.</u> | Classification of Claims and Interest and Treatment | 7 |
| <u>IV.</u> | Liquidation Analysis and Projections | 10 |
| <u>V.</u> | Treatment of Executory Contracts and Unexpired Leases | 10 |
| <u>VI.</u> | Means for Execution of the Plan | 11 |
| <u>VII.</u> | Effect of Confirmation and Releases | 11 |
| <u>VIII.</u> | Discharge | 12 |
| <u>IX.</u> | Reservation of Rights | 12 |
| <u>X.</u> | General Provisions | 13 |

I. DEFINITIONS

The following terms, when used in the Plan, shall, unless the context otherwise requires, have the following meanings, respectively:

1. "941 Taxes" shall mean taxes owed by the Debtor or Reorganized Debtor under I.R.C. § 3111(a) and (b).

2. "Administrative Claim" shall mean a Claim entitled to priority by 11 U.S.C. § 507(a)(2).

3. "Allowed Claim" shall mean, any Claim (a) that has been listed by the Debtor in their Schedule D [ECF No. 33] or their Amended Schedule E/F [ECF No. 54] as liquidated in amount and not "disputed" or "contingent" and that has not been supplanted by a proof of claim filed by the scheduled Creditor in the Chapter 11 Case, (b) that is reflected by a timely proof of claim in the Chapter 11 Case to which no objection or request for estimation has been filed on or before the Effective Date, or (c) that has been allowed by a final order of the Court.

4. "Allowed _____ Claim" shall mean an Allowed Claim of the type described.

5. "Bekker" shall mean David Bekker, the sole shareholder of the Debtor.

6. "Chapter 11 Case" shall mean the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Court and being administered under Case No. 23-34586.

7. "Claim" shall mean any claim (as that term is defined in 11 U.S.C. § 101(5)) against the Debtor.

8. "Class" shall mean any class into which Claims are classified in this Plan.

9. "Confirmation" shall mean the Court's entry of an order confirming the Plan.

10. "Court" shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, presiding over the Chapter 11 Case.

11. "Creditor" shall have the same meaning as its given by 11 U.S.C. § 101(10).

12. "Debtor" or "LBU" shall mean LBU Franchises Corporation d/b/a Light Bulbs Unlimited.

13. "DIP Loan" shall mean the post-petition financing authorized by the Court's *Final Order Granting Emergency Motion Regarding Post-Petition Financing and Use of Cash Collateral* [ECF No. 46].

14. "DIP Loan Claim" shall mean the Claim held by Fox because of the DIP Loan.

15. "Effective Date" shall June 1, 2024, the beginning of the Reorganized Debtor's fiscal year.

16. "Fox" shall mean Fox Capital Group, LLC.

17. "Harris County" shall mean the Harris County Tax Assessor-Collector.

18. "IRS" shall mean the Internal Revenue Service.

19. "MCA" shall mean merchant cash advance agreement.

20. "Plan" shall mean this Plan of Reorganization in its present form or as it may be amended, altered, varied, or modified from time to time.

21. "Priority Claim" shall mean a Claim entitled to priority under 11 U.S.C. § 507(a)(3)-(8).

22. "Reorganized Debtor" shall mean the Debtor, as reorganized pursuant to this Plan.

23. "Released Party" shall mean: (a) the Debtor; (b) the Reorganized Debtor; (c) Bekker; and (d) with respect to each entity identified in clauses (a) and (c), their agents, attorneys, and the persons identified in 11 U.S.C. § 101(31)(B).

24. "Releasing Party" shall mean: (a) the Debtor and its affiliates (as that term is defined in 11 U.S.C. § 101(2)); (b) the Reorganized Debtor and its affiliates (as that term is defined in 11 U.S.C. § 101(2)); (c) all holders of Claims and their affiliates (as that term is defined in 11 U.S.C. § 101(2)) entitled to vote under the Plan that vote to accept the Plan; (d) all holders of Claims and their affiliates (as that term is defined in 11 U.S.C. § 101(5)) who do not vote to accept the plan (whether because they vote to reject, abstain from voting, or are not entitled to vote) but do not affirmatively opt out of granting the releases set forth in section VII of the Plan by filing the opt-out election included with the ballot or notice of non-voting status with the Clerk of Court prior to the Voting Deadline; and (e) with respect to each entity identified in clauses (a) through (d), their current and former officers, managers, directors, equity holders, agents, attorneys, and relatives (as that term is defined in 11 U.S.C. § 101(45)).

25. "SBA" shall mean United States Small Business Administration.

26. "SBA Loan" shall mean the Economic Injury Disaster Loan between the Debtor and the SBA.

27. "Secured Claim" shall mean the Claim of any Creditor secured by a lien or liens on property of a Debtor, which lien and/or liens are valid, perfected, and enforceable under applicable law, and are not subject to avoidance under the Code or other applicable non-bankruptcy law, and are duly established in this case, to the extent of the value of the security, as determined in accordance with 11 U.S.C. § 506.

28. "Unsecured Claim" shall mean a claim that is not an Administrative Claim, a DIP Loan Claim, a Priority Claim, or a Secured Claim.

## II. DEBTOR'S HISTORY

### A. Nature of the Debtor's Business & Structure

LBU is a lighting retailer located in the Montrose area of Houston, Texas. LBU is wholly owned by Bekker, who also serves as the manager and President of LBU. LBU employs 2 individuals other than Bekker.

### B. History of the Debtor's Business Operations

LBU was founded in 1986 by Bekker and his brother. Over the next 25 years, LBU realized steady profits and developed a loyal clientele based on its reputation for its broad inventory and excellent customer service. In the mid-2010's, Bekker's brother was diagnosed with cancer and died in 2016. This caused Bekker severe distress and LBU's business suffered as a result.

To obtain immediate financing to pay vendors and rent during this down period, LBU entered several MCAs where it agreed to sell its future receivables to various purchasers. Each MCA required LBU to pay 15% or more of its receipts to the purchaser. Although these MCAs provided short-term liquidity to LBU, the high percentage of receivables purchased in each MCA eventually caused severe liquidity constraints that left it unable to satisfy its MCA obligations and potentially subject to devastating creditor remedies.

To remedy the situation, LBU filed a voluntary chapter 11 petition in November 2018. LBU's bankruptcy plan was confirmed in July 2019.

### C. Events Leading to the Chapter 11 Cases

Shortly after LBU's chapter 11 plan was confirmed and went effective, the COVID-19 pandemic began. Although LBU was allowed to remain open as an "essential" retailer, its business was negatively impacted by the pandemic and LBU struggled to meet all its obligations under its confirmed chapter 11 plan as well as to its employees, landlord, and vendors. In response to the pandemic, LBU obtained the SBA Loan in the amount of $300,000 in March of 2020.

In April 2022, the United States Department of Energy published guidelines that effectively banned the sale of luminescent light bulbs beginning in August 2023. In response, light bulb manufacturers drastically reduced luminescent light bulb prices. LBU purchased as many luminescent light bulbs as it could find and obtained all the financing it could find to do so.

LBU obtained another $165,600 under the SBA Loan to purchase luminescent lightbulbs. It also obtained MCA financing to purchase luminescent lightbulbs. Although the luminescent light bulbs proved very profitable on a per-unit basis, they did not end up being profitable once the financing costs of the MCA obligations were considered.[1] As a result, LBU again entered a liquidity spiral where it obtained new MCAs to meet its existing MCA obligations but committed even higher percentages of its future receipts under the new MCAs.

Exacerbating the problem, LBU inadvertently defaulted on the SBA Loan and certain payments due to the IRS under LBU's confirmed chapter 11 plan. Upon receiving notice of its defaults from the SBA and IRS, LBU attempted to work out its issues with the agencies but was unsuccessful in doing so largely because of the liquidity constraints caused by the MCAs. The Debtors thus determined that a Chapter 11 reorganization under Subchapter V was the only feasible way to effectively perform its obligations due to the SBA and IRS.

### D. Filing of the Chapter 11 Cases

On November 22, 2023, Pete's filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and made a subchapter V election. The Chapter 11 Case is pending in the Court in Houston, Texas.

---

[1] The APR of an MCA often exceeds 100%.

**E. Debtor's Assets and Liabilities**

The Debtor's Assets and Liabilities are described in detail in their Schedules and Amended Schedules [ECF Nos. 33, 54]. Additionally, a liquidation analysis is included as **Exhibit A** to the Plan.

E.1 Debtor's Assets

As of May 1, 2024, the Debtor has assets with a value of approximately $200,138.42: $18,138.42 in cash, approximately $60,000 in inventory, approximately $7,000 in office furniture and equipment, and approximately $115,000 in real estate.

The Debtor has investigated potential claims against third parties, including claims arising under the avoidance powers granted to the Debtor under 11 U.S.C. §§ 544-552. Based on this investigation, the Debtor may have colorable claims against several MCA lenders, including Unlimited Capital, LLC, for fraudulent transfers and preferences and against Jacovetti Law, P.C., and Global Resource Advisors LLC for breach of fiduciary duty, fraud, unjust enrichment, and money had and received.

E.2 Debtor's Liabilities

The Debtor calculates that the presently Allowed Claims in the Chapter 11 Case totals $1,100,839.82, as reflected in the table below.

| Creditor Name | Amount of Claim | Source |
|---|---|---|
| American Express | $83,314.78 | Claim Nos. 2-1, 4-1, 5-1 |
| BGW Properties | $12,000.00 | Schedule E/F [ECF No. 54], 3.1 |
| Bulbrite | $7,500.00 | Schedule E/F [ECF No. 54], 3.2 |
| City of Houston | $1,968.56 | Schedule E/F [ECF No. 54], 3.3 |
| Deep Roof Lighting | $2,100.00 | Schedule E/F [ECF No. 54], 3.5 |
| Demetrius Navarro | $16,000.00 | Schedule E/F [ECF No. 54], 3.6 |
| Fox | $66,816.25 | DIP Loan |
| Harris County | $13,172.68 | Claim No. 7-2 |
| House of Troy | $2,100.00 | Schedule E/F [ECF No. 54], 3.10 |
| IRS | $355,802.92 | Claim No. 3-8 |
| Nora Lighting | $1,500.00 | Schedule E/F [ECF No. 54], 3.12 |
| Ray Spaulding | $20,000.00 | Schedule E/F [ECF No. 54], 3.13 |
| RISE Assoc. Mgmt. Grp. | $3,489.00 | Schedule E/F [ECF No. 54], 3.14 |
| SBA | $495,791.29 | Schedule D [ECF No. 33], 2.3 |
| Texas Comptroller | $655.74 | Claim No. 6-1 |
| Texas Workforce Comm'n | $525.80 | Claim No. 9-1 |
| TXU Retail Energy Co., LLC | $3,489.78 | Claim No. 10-1 |
| Uline | $273.02 | Claim No. 1-1 |
| Unlimited Capital | $14,340.00 | Claim No. 11-1 |

### F. Current and Historical Financial Condition

LBU's historical financial performance is provided in the table below.

| Period | Revenue | Expense | Net Income |
| --- | --- | --- | --- |
| 6/1/22-5/31/23 | $1,128,255 | $1,144,779 | -$17,713 |
| 6/1/21-5/31/22 | $1,155,082 | $1,194,537 | -$39,455 |
| 6/1/20-5/31/21 | $1,004,380 | $1,099,100 | -$94,720 |

The Debtor's detailed financial results since commencing the Chapter 11 Cases are available in its Monthly Operating Reports [ECF Nos. 48, 58, 66, 74, 81]. Projections of the Debtor's future performance are included as **Exhibit B** to the Plan.

### G. Significant Events During the Chapter 11 Cases

Upon filing its voluntary petition on November 22, 2023, LBU sought authority to pay prepetition wages to its employees and to obtain post-petition financing from Fox, one of its prepetition creditors, in the form of the DIP Loan. At an initial hearing on December 1, 2023, the Court approved LBU's payment of prepetition wages [ECF No. 26] and post-petition financing from Fox on an interim basis [ECF No. 27]. On December 11, 2023, the Court approved the DIP Loan on a final basis [ECF No. 46].

On December 27, 2023, Bekker appeared at LBU's meeting of creditors on LBU's behalf; the meeting was concluded on that same date. Also on December 27, 2023, the Court approved LBU's retention of Kean Miller LLP as counsel in this case [ECF No. 49] and the payment of a $15,000 retainer to Kean Miller LLP [ECF No. 50].

On January 17, 2024, the Court held the Subchapter V status conference as required by 11 U.S.C. § 1188. LBU reported to the Court on its progress negotiating a resolution of the IRS' Claim and that a plan would be forthcoming before the deadline for filing imposed by 11 U.S.C. § 1189(b).

On February 12, 2024, LBU filed its proposed *Plan of Reorganization dated February 12, 2024* [ECF No. 59]. On April 23, 2024, the Court held a hearing on LBU's proposed plan. Based on the IRS' objection to the plan [ECF No. 78], LBU advised the Court it would not be able to confirm the proposed plan. The Court then entered an order requiring the Debtor to file an amended plan by May 10, 2024 [ECF No. 85].

### III. CLASSIFICATION OF CLAIMS AND INTERESTS AND TREATMENT

#### A. Summary

All Claims and equity interests in the Debtor are placed in the Classes set forth below. The Plan places Claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or equity interests is impaired or unimpaired. A Claim or equity interest can be impaired if the Plan alters the legal,

equitable or contractual rights to which the Claimants or equity holders are otherwise entitled. If the Plan is confirmed, each Creditor's and equity holder's recovery is limited to the amount provided in the Plan.

Only Creditors in Classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A Class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a Class of equity interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed equity interest holders that actually vote, vote in favor of the Plan. A Class that is not impaired is deemed to accept the Plan. A Class that does not received or retain any property under the Plan is deemed to reject the Plan.

### B. Class 1 – Non-Voting Claims

B.1    Class 1A – Court Approved Professionals.

Class 1A consists of the Allowed Administrative Claims held by the Debtor's attorneys, subchapter V trustee Thomas A. Howley, and any other professionals whose employment was approved by the Court prior to the Effective Date and whose fees for services rendered and expenses incurred are approved by the Court under 11 U.S.C. § 330. In complete and final satisfaction of their Claims, all members of this Class shall receive either: (a) cash in the full amount of the Claim on the Effective Date, or (b) any other less favorable treatment that a holder of a Class 1A Claim may agree to with the Reorganized Debtor.

**Any Creditor asserting an Administrative Claim under § 503(b)(2) (*i.e.,* a Class 1A Claim), must file an application for compensation under § 330 within 30 days of Confirmation.**

This Class is not entitled to vote, its treatment is mandated by the provisions of §§ 1129(a)(9) and 1191(a).

For the avoidance of doubt, upon Confirmation, the Reorganized Debtor may employ professionals without seeking Court approval under § 327 and may pay professionals employed post-Confirmation without receiving Court approval under § 330.

B.2    Class 1B – Harris County Claims.

Class 1B consists of all Allowed Priority Claims, any Allowed Secured Claims that would otherwise meet the description of a Priority Claim under 11 U.S.C. § 507(a)(8), and any Allowed Administrative Claims under § 503(b)(1)(B) of Harris County. In complete and final satisfaction of Harris County's Claims that are due and payable on the Effective Date, it shall receive equal monthly payments beginning on July 15, 2024, and continuing December 15, 2028. Any remaining tax amounts due and owing under the claims shall be paid in a lumpsum on December 15, 2028.

All Class 1B Claims that are yet not due and payable on the Effective Date shall be paid by the Reorganized Debtor in the ordinary course.

Notwithstanding anything in the Plan to the contrary, Harris County's allowed secured tax claim shall accrue interest at the rate of twelve percent (12%) per annum from the Petition Date until the tax debt is paid in full. Additionally, all ad valorem tax liens securing the pre- and post-petition taxes will be retained until all such taxes are paid in full. The Reorganized Debtor shall pay all postpetition taxes (tax year 2024 and subsequent) in the ordinary course of business and prior to delinquency under Texas law without the need of Harris County to file an administrative expense claim and/or request for payment. The failure to pay any postpetition ad valorem taxes on property it still owns shall be considered a default under this Plan. In the event postpetition taxes are not paid prior to delinquency as required under Texas laws, penalties and interest shall accrue as provided under such laws and Harris County is authorized to immediately commence any and all collection actions authorized under Texas laws, in state court without further notice of this Court.

This Class is not entitled to vote, its treatment is mandated by the provisions of 11 U.S.C. §§ 1129(a)(9) and 1191(a).

### B.3    Class 1C – IRS Claims.

Class 1C consists of all Allowed Claims of the IRS. In complete and final satisfaction of the IRS's Claims, it shall receive either: (a) any and all amounts the Reorganized Debtor owes the IRS under 11 U.S.C. § 503(b)(1)(B) on the Effective Date, and $7,570.25 on the 15th of each month, beginning January 15, 2025, and continuing through November 15, 2028 (47 payments totaling $355,801.75); or (b) any other less favorable treatment that the IRS may agree to with the Reorganized Debtor.

All Class 1C Claims that are yet not due and payable on the Effective Date shall be paid by the Reorganized Debtor in the ordinary course. Additionally, the Reorganized Debtor shall pay all postpetition taxes owed to the IRS in the ordinary course of business and prior to delinquency under federal law without the need of the IRS to file an administrative expense claim and/or request for payment. The failure to pay any postpetition taxes to the IRS still owns shall be considered a default under this Plan. In the event postpetition taxes are not paid prior to delinquency as required under federal law, penalties and interest shall accrue as provided under such laws and the IRS is authorized to immediately commence any and all collection actions authorized under applicable laws without further notice of this Court. Moreover, the Reorganized Debtor shall continue paying its 941 Taxes as a "monthly depositor."

This Class is not entitled to vote, its treatment is mandated by the provisions of 11 U.S.C. §§ 1129(a)(9) and 1191(a).

### B.4    Class 1D – State Claims.

Class 1D consists of all Allowed Priority Claims and any Allowed Administrative Claims

under § 503(b)(1)(B) of the Texas Comptroller of Public Accounts and the Texas Workforce Commission. In complete and final satisfaction of their Claims, all members of this Class shall receive either: (a) cash in the full amount of the Claim on the Effective Date, or (b) any other less favorable treatment that a holder of a Class 1D Claim may agree to with the Reorganized Debtor.

This Class is not entitled to vote, its treatment is mandated by the provisions of 11 U.S.C. §§ 1129(a)(9) and 1191(a).

B.5     Class 1E – Fox.

Class 1E consists of the Allowed DIP Loan Claim held by Fox. Fox's legal, equitable, and contractual rights under the DIP Loan are unaltered by the Plan.

This Class is not entitled to vote.

B.6     Class 1F – Other Administrative Claims.

Class 1F consists of all Allowed Administrative Claims that are not Class 1A, 1B, 1C, 1D, or 1E Claims and that have not been paid in the ordinary course of the LBU's business affairs under 11 U.S.C. § 363(c)(1). In complete and final satisfaction of their Claims, all members of this Class shall receive either: (a) cash in the amount of their Claim on the Effective Date or within five (5) business days of the date on which the Claim becomes an Allowed Claim, or (b) any other less favorable treatment that a holder of a Class 1F Claim may agree to with the Reorganized Debtor.

**Any Creditor asserting a Class 1F Claim, must file an application for Administrative Claim within 30 days of the Effective Date.**

This Class is not entitled to vote, its treatment is mandated by the provisions of §§ 1129(a)(9) and 1191(a).

**C.  Class 2 – SBA Secured Claim**

Class 2 consists of the Allowed Secured Claim of the SBA. Based upon the Debtor's Schedules and Amended Schedules [ECF Nos. 33, 54] and the DIP Loan [ECF No. 46] and the Allowed Secured Claims of the IRS and Harris County [Claims No. 3-8, 7-2], the SBA's Claim is unsecured. To the extent the SBA files a proof of claim that asserts its Claim is secured, LBU will file a motion to determine the value of the SBA's Secured Claim under 11 U.S.C. § 506(a)(1).

To the extent the SBA is entitled to an Allowed Secured Claim, in complete and final satisfaction of the SBA's Allowed Secured Claims, the SBA shall receive either: (a) the amount of its claim in equal monthly installments beginning on July 15, 2024, and continuing June 15, 2027 (36 payments) with 8% interest per annum, or (b) any other less favorable treatment that the SBA may agree to with the Reorganized Debtor.

Class 2 is not impaired and thus is deemed to accept.

**D. Class 3 – Unsecured Claims**

D.1     Class 3A – Convenience Claims.

Class 3A consists of the Allowed Unsecured Claims in an amount of less than $50,000.

In complete and final satisfaction of their Claims, all members of this Class shall receive either: (a) cash in the amount of 5% of their Claim on the Effective Date, or (b) any other less favorable treatment that a holder of a Class 1F Claim may agree to with the Reorganized Debtor.

Class 3A is impaired and is entitled to vote.

D.2     Class 3B – General Unsecured Claims.

Class 3B consists of all Allowed Claims against the Debtor that are not in Classes 1A, 1B, 1C, 1D, 1E, 1F, 2, or 3A.

In complete and final satisfaction of their Claims, all members of this Class shall receive either: (a) their *pro rata* share of $100 on the 15th of each month, beginning January 15, 2025, and continuing through December 15, 2028, or (b) any other less favorable treatment that a holder of a Class 1F Claim may agree to with the Reorganized Debtor.

Class 3B is impaired and is entitled to vote.

**E. Class 4 – Equity Interests**

Class 4 consists of the Debtor's sole equity holder, Bekker.  Bekker shall retain his interests in the Reorganized Debtor.

Class 4 is not an impaired class and is deemed to accept.

## IV. LIQUIDATION ANALYSIS & PROJECTIONS

A liquidation analysis for the Debtor is included in this Plan as **Exhibit A**.  Projections of the Reorganized Debtor's future performance are included as **Exhibit B**.

Under this Plan, the Debtor's Creditors are receiving not less than they would receive in a chapter 7 liquidation.  Accordingly, this Plan is in the best interest of Creditors as required under 11 U.S.C. § 1129(a)(7).

Moreover, the Debtor expects to have sufficient future income to perform under the Plan. Accordingly, the Plan satisfies the "feasibility" requirements under § 1129(a)(11).

## V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All the executory contracts and unexpired leases listed on the Debtor's Schedule G [ECF

No. 33] shall be assumed by the Debtor upon the Confirmation Date.  Additionally, all other executory contracts the Debtor is a party to are being assumed upon Confirmation.

Based upon the Debtor's books and records, it must cure a default to BGW Properties for $11,677 to assume its lease with BGW Properties.  **This is the only default on an executory contract or lease that the Debtor is aware of.**  The Reorganized Debtor shall pay an additional $500 per month in rent from January 2025 through December 2026 to cure the default to BGW Properties.

**If any party objects to the assumption of its unexpired lease or executory contract, it must file and serve its objection to the assumption within the deadline for objecting to Confirmation.**

## VI. MEANS FOR EXECUTION OF THE PLAN

The Reorganized Debtor will continue to operate the Debtor's business and is authorized to take any actions they deem necessary to operate the Reorganized Debtor.  Bekker shall be the President of the Reorganized Debtor on and after the Effective Date.

Notwithstanding the provisions of 11 U.S.C. § 1194, the Reorganized Debtor shall make all distributions under the Plan.

## VII. EFFECT OF CONFIRMATION AND RELEASES

All consideration provided pursuant to this Plan shall be in exchange for and in complete satisfaction and release of all Claims of any nature whatsoever against the Debtor and Reorganized Debtor and any property of the Debtor and Reorganized Debtor pursuant to this Plan and except as otherwise provided in the Plan.  Upon Confirmation, all property of the Debtor and Reorganized Debtor, tangible and intangible, will be free and clear of all Claims, liens, charges, and any other encumbrances, except as provided in the Plan.  The provisions of the Plan shall bind all Creditors of the Debtor, even if the Creditor did not accept this Plan.  The rights and obligations of any entity affected under this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**Upon Confirmation, all Creditors scheduled by the Debtor may not take any act to commence or continue any judicial, administrative, or other legal action or proceeding against Bekker, the Debtor, or the Reorganized Debtor, may not take any act to collect, assess, or recover any Claims against Bekker, the Debtor or the Reorganized Debtor, and may not seek to enforce any Claims they may hold against Bekker, the Debtor, or the Reorganized Debtor until the earlier of: 1) the completion of the Plan, or 2) a default under the Plan.**

**Except as otherwise specifically provided in section IX of the Plan, upon the Effective Date, all holders of Claims are conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each Released Party from all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether existing now or hereafter**

**arising, in law, equity, contract, tort or otherwise; except each Released Party shall not release any claims relating to actual fraud, willful misconduct, or gross negligence.**

**Upon the Effective Date, each Released Party is conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each Releasing Party from all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known our known, foreseen or unforeseen, matured or unmatured, whether existing now or hereafter arising, in law, equity, contract, tort or otherwise.**

**Confirmation of this Plan shall constitute the Court's approval, pursuant to Federal Rule of Bankruptcy Procedure 9019, of the releases provided in this section VII of the Plan, and further shall constitute the Court's finding that the releases are: (a) in exchange for the good and valuable consideration provided by each Released Party under this Plan; (b) a good-faith settlement and compromise of the Claims released by each Released Party; (c) in the best interest of the Debtor, its estate, and all holders of Claims and interests; (d) fair, equitable, and reasonable; and (e) given and made after due notice and opportunity for hearing.**

Notwithstanding the provisions of this section, nothing in the Plan shall (i) cause the United States of America, inclusive of its agencies and sub agencies *other* than the SBA and IRS, (the "United States") and any state or local authority, other than Harris County, (the "Local Governments" and with the United States, the "Governmental Authorities") to be a Released or Releasing Party under the Plan Documents; (ii) prevent any Governmental Authority from pursing any claim, liability, right, defense, or Cause of Action against a Released Party, *provided that* nothing in the Plan shall alter any legal or equitable rights or defenses of the Released Party under non-bankruptcy law with respect to any such claim, liability, or Cause of Action; be construed as a compromise or settlement of any claim, interest, or cause of action of the Governmental Authorities; (iii) affect or impair the exercise of the United States of America's (inclusive of its agencies or subagencies), or any states' or local authorities' police and regulatory powers; (iv) constitute an approval or consent by the Governmental Authorities without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (v) exculpate any party or person from any liability to the Governmental Authorities whatsoever.

## VIII. DISCHARGE

If the Plan is confirmed under 11 U.S.C. § 1191(a), upon Confirmation, the Debtor will be discharged from any debt that arose before Confirmation to the extent specified in § 1141(d) of the Bankruptcy Code.

If the Plan is confirmed under 11 U.S.C. § 1191(b), as soon as practicable after completion by the Reorganized Debtor of all payments due under the Plan, the Court shall grant the Debtor a discharge of all debts provided in 11 U.S.C. § 1141(d)(1)(A), except as otherwise provided in this Plan.

## IX. RESERVATION OF RIGHTS

Prior to the Effective Date, no provision of this Plan, nor any statement or provision contained herein, nor the taking of any action with respect to the Plan by the Debtor shall (i) be deemed to be an admission against interest and (ii) or be deemed to be a waiver of any rights which the Debtor might have against a Creditor. If the Effective Date does not occur, neither the Plan nor any statement contained therein may be used or relied upon in any matter in any suit, action, proceeding or controversy within or outside of this bankruptcy case.

Notwithstanding the releases in section VII of the Plan, the Debtor reserves the following causes of action to be prosecuted by the Reorganized Debtor post-confirmation:

- causes of action against Unlimited Capital, LLC, for fraudulent transfer arising under 11 U.S.C. § 544, 548, for preferential transfers under 11 U.S.C. § 547, and to recover avoided transfers under 11 U.S.C. § 550; and

- all the Debtor's causes of action against Jacovetti Law, P.C., and Global Resource Advisors LLC, including its claims for breach of fiduciary duty, fraud, unjust enrichment, and money had and received, are reserved to be prosecuted by the Reorganized Debtors post-confirmation.

## X. GENERAL PROVISIONS

### A. Retention of Jurisdiction by the Court

The Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan, including adjudicating any adversary proceedings or contested matters related to defaults under the Plan; (ii) to rule on any modification of the Plan proposed under 11 U.S.C. § 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Claims; (iv) to resolve all issues regarding Claims objections, and any issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which the Debtor may own, including preference and fraudulent transfer causes of action.

### B. Corporate Governance

The Reorganized Debtor shall continue to be governed in accordance with its pre-petition Articles of Incorporation and Bylaws.

### C. Default

If there is any default under the Plan, a Creditor may file a notice of default. If the default is not cured within 30 days of a notice of default being filed with the Court, the Creditor may seek any rights available to it under the Plan and under applicable law. The Reorganized Debtor explicitly consents to the Court's jurisdiction to resolve any and all matters related to a default

under the Plan. A default under the Plan shall only be deemed to occur if a payment to be made by the Reorganized Debtor under sections III or V of the Plan is not timely distributed.

### D. Successors & Assigns

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit or detriment of any heir, executor, successor or assign, officer, manager, director, agent, representative, beneficiary, or guardian, if any, of each entity.

### E. Notices

Notices to the Debtor and Reorganized Debtor may be sent by United States first class mail to:

LBU Franchises Corporation d/b/a Light Bulbs Unlimited
1203 Westheimer Road
Houston, Texas 77006

With a copy by e-mail to:

Broocks 'Mack' Wilson
mack.wilson@keanmiller.com


By: _____
Name: David Bekker
Title: President
Dated: May 10, 2024